**FILED**

**JANUARY 24, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SCARLATO, SCARLATO & SONS REALTY & DEVELOPMENT CORP., BELLWOOD PLACE, LLC, MADISON ST. PLACE, LLC and WASHINGTON COMMONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VILLAGE OF BELLWOOD, ILLINOIS, FRANK A. PASQUALE, ROY MCCAMPBELL, ANTHONY BRUNO and ILLINOIS DEVELOPMENT SERVICES CORPORATION <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. <br><br> **08 C 546** <br><br> **JUDGE SHADUR** <br> **MAGISTRATE JUDGE BROWN** |

### VERIFIED COMPLAINT

Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place, LLC and Washington Commons, LLC, by and through their attorneys, Garfield & Merel, Ltd., for their complaint against Defendants, the Village of Bellwood ("Village"), Frank A. Pasquale ("Pasquale"), Roy McCampbell ("McCampbell"), Anthony Bruno ("Bruno") and Illinois Development Service Corporation ("IDSC"), allege and state as follows:

### I. JURISDICTION

1.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1331 since Count I arises from 42 U.S.C. §1983 and 1985 and from related violations of substantive due process and equal protection rights secured by the Fourteenth Amendment to the

United States Constitution. This Court further has supplemental jurisdiction over all pending state claims pursuant to 28 U.S.C. §1367.

## II. VENUE

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391. All Defendants reside within the geographical boundaries of the Court's judicial district and all relevant acts occurred within this district.

## III. PARTIES

3.    Plaintiff Ronald Scarlato is the principal of Scarlato & Sons Realty & Development, Inc. ("Scarlato & Sons"), an Illinois corporation in the business of owning, developing and managing commercial and industrial real estate.

4.    Scarlato & Sons' principal place of business is in Bellwood, Cook County, Illinois.

5.    Scarlato, through various entities he controls, owns various parcels of real estate in Illinois, including, without limitation, real estate located in the Village of Bellwood, Illinois. Scarlato's Bellwood real estate includes, but is not limited to, property located at 2795 West Washington Boulevard ("Washington Commons"), 3131 Randolph Street, ("Corporate Center"), 725 Madison ("Madison Property") and 110 N. 25th Avenue ("25th Avenue Property") (collectively "Scarlato Properties").

6.    Plaintiff Bellwood Place, LLC is a limited liability company in the business of acquiring and developing commercial and industrial real estate. At all relevant times, Scarlato is a principal and manager of Bellwood Place.

7.    Plaintiff Madison St. Place, LLC is a limited liability company in the business of acquiring and developing commercial and industrial real estate. At all relevant times, Scarlato is a principal and manager of Madison St. Place.

8.    Plaintiff Washington Commons, LLC is a limited liability company in the business of acquiring and developing commercial and industrial real estate. At all relevant times, Scarlato is a principal and manager of Washington Commons.

9.    Defendant Village of Bellwood is a municipal corporation and body politic located in Cook County, Illinois.

10.    Defendant Frank A. Pasquale is, at all relevant times, the Mayor of the Village of Bellwood. Defendant Pasquale is sued in his individual capacity. At all times alleged herein, Pasquale was acting under color of state law.

11.    Defendant Roy McCampbell is, at all relevant times, the Comptroller for the Village of Bellwood. Defendant McCampbell is sued in his individual capacity. At all times alleged herein, McCampbell was acting under color of state law.

12.    Defendant Anthony Bruno is, at all relevant times, the President and principal of Illinois Development Services Corporation, an Illinois corporation ("IDSC"). Bruno and IDSC, at all times alleged herein, were working in concert with, and as agents for and authorized by, the Village, Pasquale and McCampbell and, therefore, acting under color of state law.

## IV. FACTS COMMON TO ALL COUNTS

13.    In May 2006, Bellwood Place, LLC and the Village executed a Memorandum of Agreement between the Village of Bellwood and Bellwood Place, LLC ("TIF Agreement"). (A true and correct copy of the TIF Agreement is attached hereto as Exhibit 1.)

14.    Pursuant to the TIF Agreement, the Village:

(a)     Declared its intention to create a tax increment financing district ("TIF"), which would include the 25th Avenue Property owned by Scarlato;

(b)     Bellwood Place agreed to develop the 25th Avenue Property "in accordance with a TIF Redevelopment Plan to be approved by the Village;" and

(c)     Once the improvements on the Property have been demolished by Scarlato, and an "NFR letter" has been issued by the Illinois Environmental Protection Agency ("IPEA"), the Village agreed to reimburse Bellwood Place $2.3 million from TIF bond proceeds for TIF eligible development costs.

15.     The TIF Agreement further provided that the Village "will create a TIF district on the Property identified on Exhibit B [to the TIF Agreement] for the development and that [Bellwood Place, LLC] shall be designated as the exclusive developer of the TIF district . . ." (the "Exhibit B Property").

16.     The TIF Agreement further contemplated that the Village will annually reimburse Bellwood Place "up to fifty percent (50%) of TIF revenues from the subject Property . . ."

17.     In reliance on the TIF Agreement, and pursuant to its terms, Scarlato and Bellwood Place, LLC demolished all existing structures on the 25th Avenue Property and immediately sought the NFR letter contemplated by the TIF Agreement. Demolition costs exceeded $2 million. Scarlato also incurred substantial costs related to land planning and development plans contemplated by the TIF Agreement. Demolition of the existing structures on the 25th Avenue Property prevented Scarlato from deriving any rental or other income from the property until it was fully developed.

18.     In the course of Bellwood Place's performance under the TIF Agreement, Scarlato was advised by IPEA that an NFR letter could not be issued until barriers are erected on the Property, which cannot be accomplished until after the development plan is approved by the Village and construction commenced pursuant to that plan. At the time the TIF Agreement was

executed, Scarlato was not aware that the NFR letter required barrier installation prior to its issuance.

19.    Immediately after execution of the TIF Agreement, Scarlato and Bellwood Place submitted various redevelopment plans to the Village, all consistent with requirements and revisions communicated by Pasquale, Bruno and McCampbell to Scarlato. Those plans included plans for industrial and mixed use development in the spirit of, and pursuant to the terms of, the TIF Agreement. Scarlato further advised the Village that the IEPA will not issue an NFR letter until foundation barriers are erected. Despite Scarlato's compliance with the Village's direction regarding the development plans submitted by the Village, the Village continues, in bad faith, to refuse to consider or approve any redevelopment plan contemplated by the TIF Agreement or permit any construction or foundation barrier installation, thereby frustrating the purpose of the TIF Agreement and preventing Scarlato from obtaining the NFR letter.

20.    The Village has categorically and arbitrarily rejected all the contemplated development plans submitted by Bellwood Place and Scarlato, despite compliance of the plans with continually changing requirements imposed by the Village. Further, the Village continues to impose burdensome requirements for development plans (including the inclusion of a Metra station and/or local colleges, none of which were feasible) making it impossible to comply with the Village's requirements. The Village has instituted those requirements in bad faith to prevent Bellwood Place from performing under the Agreement, collecting TIF reimbursement funds and otherwise developing the TIF Property, as contemplated by the TIF Agreement. On information and belief, the Village is acting in concert with, and for the benefit of, Bruno and IDSC for the purposes of effectively making it impossible for Bellwood Place to perform under the TIF Agreement so that the 25th Avenue Property is effectively taken from Bellwood Place, rendered

useless without the ability to develop it and effectively condemned so that the Village can effectively control the 25th Avenue Property and prevent Scarlato from developing the property.

21.     Further, the Village continues to fail and refuse to allow Bellwood Place to be the "exclusive developer" of the Exhibit B Property, as required under the TIF Agreement.

22.     Further, in reliance on the representations by Pasquale that development plans would be immediately approved, and the terms of the TIF Agreement, Scarlato and Bellwood Place demolished all existing structures on the 25th Avenue Property.  As of January 1, 2008, Scarlato incurred out-of-pocket costs in excess of $5.65 million in connection with, and in reliance on, the TIF Agreement, including development, planning, carry and demolition costs contemplated by the TIF Agreement, all in reliance on the TIF Agreement.  Further, Scarlato and Bellwood Place have been deprived of TIF reimbursement funds contemplated by the TIF Agreement as a result of Defendants' breach of its duty of good faith and fair dealing under the TIF Agreement.

23.     Throughout 2006 and 2007, Scarlato and Bellwood Place continued to act in good faith pursuant to the TIF Agreement and submitted various development plans consistent with the Village's changing positions on the nature of the development, all as communicated to Scarlato by Pasquale, McCampbell and Bruno.

24.     In April 2007, the Village placed an advertisement in a Crains Chicago Business publication ("Crains Ad"), which described property that included the 25th Avenue Property and the Exhibit B Property as "Available for Redevelopment." A copy of the Crains Ad is attached hereto as Exhibit 2.  The Crains Ad constitutes Plaintiffs' first notice that the Village did not intend to fulfill its obligations to Bellwood Place under the TIF Agreement and that it was

actively seeking other parties to develop the 25th Avenue Property (owned by Bellwood Place and described in the Crains Ad as "available") and the Exhibit B Property.

25.     The action of the Village in soliciting developers for the properties described in the TIF Agreement constitutes an anticipatory breach and repudiation of the Village's obligation to allow Bellwood Place to develop those properties and further evidences the Village's intent to render the 25th Avenue Property useless and effectively condemned.

26.     In or about July 2005, Scarlato began in the process of directly negotiating the purchase of property located at 150-160 N. 25th Avenue and 2680-2800 W. Lake Street, Melrose Park, Illinois ("Melrose Park Property") with the owner of that Property ("Owner").  The Melrose Park Property is contiguous to, and directly north of, the TIF Property and ownership and control of the Melrose Park Property is beneficial to the development of the TIF Property. At that time, in the course of negotiations with the Owner, Scarlato reached tentative agreements with Owner regarding essential elements of the purchase of the Melrose Park Property, including price ($16.5 million).  At that time, Scarlato had a reasonable expectation of entering into a valid business and contractual relationship with the Owner for the purchase of the Property, which Scarlato intended to develop.

27.     Thereafter, in or about May 2006, Scarlato attended a meeting at the Village of Bellwood, at which Bruno, Pasquale and McCampbell were present.  At all times, Bruno and IDSC were retained by the Village of Bellwood, and were acting in concert with and as agent for the Village, with respect to the development of various aspects of TIF projects in Bellwood and Melrose Park.  At that meeting, Scarlato disclosed to the Village and Bruno that he had negotiated the purchase of, and intended to develop, the Melrose Park Property as part of other Tax Increment Financing projects contemplated by the Village.

28.    At that time, Pasquale and Bruno advised Scarlato that the Melrose Park Property was important to the overall development of various TIF districts and requested that Scarlato cease all negotiations with the Seller of the Melrose Park Property and allow the Village to purchase that property without any direct involvement from Scarlato.  Pasquale and Bruno further advised Scarlato that the Village was concerned that the purchase price being negotiated by Scarlato was too high and may affect future contemplated purchases of related properties by the Village in connection with its various TIF development plans.  Pasquale and Bruno advised Scarlato at that time that if Scarlato agreed to cease negotiations with the Owner and allow the Village to negotiate directly to purchase the Property, the Village would close on that sale and thereafter sell and convey the Property to Scarlato so that it could be developed by Scarlato as a component of contemplated TIF's.

29.    On information and belief, Pasquale and Bruno, at all times, intended to interfere with Scarlato's prospective contract for the purchase of the Melrose Park Property and further never intended to sell or transfer the Melrose Park Property to Scarlato or otherwise involve him in any development opportunity.

30.    In reliance on Pasquale's representations (and in anticipation of his subsequent purchase, as promised, of the Melrose Park Property from the Village), Scarlato withdrew from contract expectancy with the owner regarding the final contract to purchase the Melrose Park Property and did not otherwise interfere with subsequent efforts by the Village to purchase that property.  On information and belief, the Village, either directly or through a representative, purchased and now holds legal or equitable title to the Melrose Park Property and is working directly with Bruno and IDSC regarding development of that property to the exclusion of

Scarlato.  On information and belief, the Village paid $16.5 million for the Melrose Park Property.

31.     Subsequent to the Village's purchase of the Melrose Park Property, Pasquale and Bruno advised Scarlato that, before the property could be sold to Scarlato, the parties must reach agreement on development plans for that property regarding all properties in Bellwood and Melrose Park on which the Village contemplated development at that time.  In reliance on the continuing promises of Pasquale and the Village that the Melrose Park Property would be sold to Scarlato as promised, Scarlato hired land planners, prepared development plans and otherwise incurred significant costs relating to the preparation of plans for Village review.  The Village refused to consider or approve submitted plans.  On information and belief, the Village utilized plans and drawings prepared by and paid for by Scarlato in Village promotional materials relating to development projects without any reimbursement to Scarlato.  In April 2007, the Crains Ad was Scarlato's first notice that the Village never intended to sell him the Melrose Park Property or participate in its development.

32.     Despite Pasquale's and Bruno's representations and agreement on behalf of the Village, the Village has failed and refused to sell or convey the property to Scarlato or otherwise allow him to participate in the redevelopment of the property in any way.  As a direct and proximate result of Pasquale's fraudulent representations regarding the sale of the Property and development thereof, Scarlato abandoned the business expectancy with Owner and allowed the Village to purchase the Melrose Park Property, to his detriment.

33.     In May 2007, Scarlato received a telephone call from Frank Pasquale, Jr., the son of Defendant Pasquale.  Pasquale, Jr. advised Mr. Scarlato that he was calling from the Mayor's

office, the Mayor was present in the room and further requested and strongly urged Mr. Scarlato to hire, or otherwise find employment for, Pasquale, Jr.

34.    Scarlato, given his substantial property and development interests in the Village of Bellwood, and business dealings with the Village, including, without limitation, the TIF Agreement, believed that cooperation with what he understood to be the Mayor's direction was necessary to preserve his business interests with the Village and prevent potential vindictive action by Pasquale that could adversely affect his business interests in the Village. Therefore, he agreed to make inquiries regarding the employment of Pasquale, Jr. Thereafter, in May 2007, Scarlato made such inquiries and successfully procured employment for Pasquale, Jr. at Universal Transportation d/b/a MetStar ("MetStar") at a salary of $11,520 per month, beginning on May 22, 2007.

35.    On information and belief, Pasquale, Jr. was terminated from his position at MetStar on or about July 20, 2007. Scarlato was not involved in, did not control, nor did he otherwise have knowledge of, the decision to terminate Pasquale, Jr. or the circumstances surrounding his termination.

36.    Immediately after the termination of Pasquale, Jr., the Village, under the direction of Pasquale and McCampbell, initiated a campaign of harassment, selective enforcement of Village ordinances and violations of Scarlato's substantive due process and equal protection rights, all motivated solely by personal animosity and directed toward Scarlato's business interests.

37.    Pursuant to Section 110.02 of the Village of Bellwood Code, "Whenever in this Code, in the Village a license is required for the maintenance, operation or conduct of any business or establishment, or for doing business or engaging in any activity or occupation, any

person shall be subject to the requirement if himself or herself or though an agent, employee or partner, he or she holds himself or herself forth as being engaged in the business or occupation . . ."

38.     After Pasquale, Jr.'s termination, the Village advised Scarlato that all tenants in any properties owned by Scarlato required business licenses and that, despite the clear and unambiguous language of Section 110.02, the Village would issue violation notices to Scarlato & Sons in the event that any tenants on Scarlato properties failed to obtain business licenses. The Village thereafter issued, and continues to issue, violation notices to Scarlato & Sons arising from alleged violations by tenants of Section 110.02. That enforcement is directed by McCampbell and Pasquale, and is arbitrary and motivated solely by their personal animosity toward Scarlato.

39.     Further, following Pasquale's termination, various tenants at properties owned by Scarlato-controlled entities have, pursuant to Village ordinance, applied for business licenses. Those tenants, including, without limitation, Ogden Glass and Jason Tire Shop and Towing, have been subjected to unexplained delays and directly advised by Village employees (controlled by and at the direction of McCampbell) that, because the tenants were applying for permits in buildings owned by Scarlato-related entities, the tenants are "doing business with the wrong people". Tenants and prospective tenants were told that they would "never get a business license" and directly told that any licenses applied for by Scarlato tenants would be significantly delayed. Further, the Village unreasonably delayed license processing for various Scarlato tenants, thereby unreasonably and arbitrarily interfering with leases, prospective leases and otherwise interfering with Scarlato's property and business interests in the Village and depriving Scarlato of substantive due process and equal protection rights.

40.     In addition, in December, 2007, Scarlato sold property located at 2400 Maywood Drive, Bellwood, Illinois to a third party purchaser.  The new owner was advised by Village employees reporting to McCampbell that the Village will not process, consider or issue any business license or certificate of occupancy for the new owner until all signs on the Property reflecting the name "Scarlato" were removed from that property.  At all times, the Village was aware that the property was transferred from an entity controlled by Scarlato to a third party purchaser.  Despite that knowledge, and motivated by the personal animosity of Pasquale, Bruno and McCampbell toward Scarlato, the Village continues to arbitrarily deny substantive due process and equal protection of the laws even to entities and individuals who they perceive as having a relationship with Scarlato.

41.     Further, since the Pasquale, Jr. termination, the Village of Bellwood Building Department and Fire Departments, at the direction of Pasquale, have directed inspectors to visit and inspect the Scarlato Properties on a daily basis, unannounced (despite efforts by Scaralto to schedule inspections in a manner that does not interfere with business operations of Plaintiffs and their tenants) further evidencing a pattern and practice of selective enforcement and harassment in an effort to deprive Scarlato of his substantive due process, equal protection and property rights.  These visits continue to result in selective enforcement of the Village Building and Fire Code against Scarlato entities, multiple violation notices for the same infractions and continuing "inspections" directed and ordered by Pasquale and motivated by his hatred, malice and vindictiveness toward Scarlato.

## COUNT I
### (42 U.S.C. Sec. 1983; Substantive Due Process and Equal Protection)

42.     Plaintiffs reincorporate and reallege paragraphs 1 through 41 as paragraph 42 of Count I as fully set forth herein.

43.    Plaintiffs have protected property interests by virtue of ownership by entities controlled and managed by Scarlato of commercial and industrial properties located in the Village of Bellwood, which are occupied by tenants pursuant to leases that require the payment of rent. Plaintiffs are persons as defined in 42 U.S.C. Section 1983 and further have protected rights under the Fourteenth Amendment of the United States Constitution against unreasonable interference with their property rights without due process of law and denial of equal protection of the laws.

44.    The Village has advised Plaintiffs that tenants in commercial and industrial buildings owned or controlled by Scarlato may not lawfully operate businesses in the Village unless each such tenant secures a business license from the Village. Business licenses, pursuant to Village ordinance, are issued as a ministerial function by employees reporting to McCampbell. On information and belief, at all times alleged herein, McCampbell reported to, and acted at the direction of, Pasquale.

45.    At the direction of McCampbell and Pasquale, the Village continues to arbitrarily delay, fail to process, deny or otherwise ignore standard and statutory processes regarding business licenses applied for by tenants in properties owned by Scarlato, controlled by Scarlato (or entities perceived to have a relationship with Scarlato) including Plaintiffs, all arbitrarily and without any basis under applicable law. The Village, Pasquale and McCampbell, in violation of due process rights of Plaintiffs, refuses to consider license applications from Scarlato tenants, intentionally and arbitrarily delays processing such licenses, advises tenants that applications by Scarlato tenants will be arbitrarily delayed or otherwise not fairly processed and otherwise denied or delayed arbitrarily, all without any rational basis.

46.    Pasquale and McCampbell, by directing employees to delay or refuse to process license applications by Scarlato tenants, further conspired to deprive Plaintiffs of their property rights by interfering with the ability of tenants to lawfully occupy Scarlato controlled properties and the rights of Scarlato to derive rent from those properties. As stated by the Village, no tenant may occupy or operate any business without first obtaining a business license.

47.    At all times alleged herein, the Village, Pasquale, and McCampbell, motivated by personal animosity toward Scarlato and acting under color of state law, conspired to arbitrarily interfere with Scarlato's property rights without affording him due process of law, thereby depriving him of his constitutional property rights, substantive due process and equal protection of the laws.

48.    In addition, the Village's campaign of daily harassment by Building Department and Fire Department officials constitutes a pattern and practice of orchestrated harassment motivated by malice and vindictiveness by Pasquale and McCampbell, who continue to direct such harassment and selective enforcement of Village Building and Fire Codes against Plaintiffs.

49.    At all times alleged herein, Pasquale and McCampbell had the power and authority to effectuate the deprivation of Plaintiff's constitutional rights and infringe upon personal property interests protected by the Fourteenth Amendment.

50.    Defendants' actions are unreasonable, arbitrary and bear no substantial relationship to the public health, safety and welfare.

51.    As a direct and proximate result of the Defendants' conspiracy to deprive Plaintiffs of their constitutional rights, Scarlato has suffered, and continues to suffer, significant damages, including, without limitation, interference with the ability to secure tenants for

commercial properties, interference with executed and prospective leases and otherwise diminishing the value of property and Defendants' ability to do business in the Village.

52.    Further, at all times alleged herein, Defendants' actions were willful, wanton, intentional, malicious and motivated solely by personal animosity toward Scarlato. Such actions constitute an orchestrated campaign of harassment by Defendants motivated by sheer malice and vindictiveness toward Scarlato, thereby further constituting violations of Plaintiffs' rights under the Equal Protection clause.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place, LLC, Washington Commons, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood, Frank A. Pasquale and Roy McCampbell:

(i)    A preliminary and permanent injunction restraining defendants from continuing to deny Plaintiff's constitutional rights;

(ii)    Judgment for compensatory damages in an amount to be determined at trial in excess of $1,000,000.00;

(iii)    Judgment for punitive damages in an amount to be determined at trial;

(iv)    As award of reasonable costs and attorneys fees pursuant to 42 U.S.C. Section 1988; and

(v)    For such other relief as this Court deems just and equitable.

## COUNT II
### (Tortious Interference with Leases)

53.    Plaintiffs reincorporate and reallege paragraphs 1 through 52 as paragraph 53 of Count II as fully set forth herein.

54.    Leases between entities controlled by Scarlato constitute valid contracts and business relationships of which Defendants had knowledge at all times alleged herein.

Defendants, at all times, were aware that the failure of prospective tenants to secure business licenses would interfere with executed and prospective leases for properties owned by entities controlled by Scarlato.

55.    The processing of business licenses pursuant to the Bellwood Village Code constitutes a ministerial function of the Village.

56.    Defendants' irreparable harm and damage arising from the intentional, arbitrary, unreasonable and irrational failure to timely and reasonably process and consider business licenses from anyone perceived to be a Scarlato tenant or relating to properties controlled by Scarlato constitutes an unjustified interference with a valid and enforceable lease between Scarlato entities and tenants, as well as prospective tenants who would otherwise be unable to occupy Scarlato Properties.

57.    Plaintiffs have no adequate remedy at law, since Defendant's actions interfere with Defendants' rights derived from real property.

58.    Defendants' actions were intentional, willful, malicious and intended to interfere with actual and prospective lease contracts.

59.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer immediate and irreparable injury as a result of Defendants' interference, including, without limitation, interference with their ability to obtain and retain tenants at properties owned by Plaintiffs; the reduction in the value of Plaintiffs' property as a result of its inability to secure and retain tenants; claims by tenants under existing leases relating to their inability to do business out of buildings owned, controlled or managed by Scarlato related entities; interference with existing and prospective leases; and inability to obtain and retain tenants based on Defendants' communication in the community regarding the Village's

intentional and arbitrary treatment of license applicants at properties owned and operated by Plaintiffs.

60.     Defendants' actions arise from ministerial acts in connection with the enforcement and mandate of statutory and legal authority.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place, LLC, Washington Commons, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood, Frank A. Pasquale and Roy McCampbell:

(i)     Granting a preliminary and permanent injunction (a) enjoining Defendants from failing to process or consider applications for licenses from tenants and prospective tenants at properties owned by entities controlled by Scarlato; and (b) requiring that Defendants follow all statutory mandates and procedures relating to issuing business licenses to tenants of properties in which Scarlato has an interest; and

(ii)    For compensatory damages in an amount to be proved at trial in excess of $1,000,000.00; and

(iii)   Punitive damages in an amount to be proved at trial;

(iv)    For such other relief as this Court deems just and equitable.

## COUNT III
### (Tortious Interference with Purchase Agreement for Melrose Park Property)

61.     Plaintiffs reincorporate and reallege paragraphs 1 through 60 as paragraph 61 of Count III as fully set forth herein.

62.     The Village, Pasquale and McCampbell, in concert with Bruno and IDSC, intentionally, unreasonably, fraudulently, maliciously and willfully interfered with Scarlato's valid business expectancy relating to the purchase of the Melrose Park Property by representing to Scarlato that, upon Scarlato's termination of his contract expectancy for the purchase of that property, the Village would purchase the property, sell it back to Scarlato and work with Scarlato

to develop the property as part of the overall TIF districts contemplated by the TIF Agreement. Such actions constitute an unjustified interference with Scarlato's expectancy regarding the purchase of that contract and caused termination of that expectancy.

63.    At all times alleged herein, Scarlato was ready, willing and able to consummate the purchase of the Melrose Park Property, but was tortiously persuaded to relinquish any rights to do so in reliance on the representations of Defendants, who never had any intent to perform its stated representation that it would transfer and convey the Melrose Park Property to Scarlato and work with him on development thereof. On information and belief, Defendants, including the Village, Bruno and IDSC, are in the process of developing the Melrose Park Property, with Village funds.

64.    As a direct and proximate result of Defendants' interference, Scarlato suffered substantial harm and injury, including, without limitation, deprivation of the benefits of ownership of the Melrose Park Property, profits derived from the development thereof and deprivation of funds derived from participation in proposed annexation or development in connection with that property. On information and belief, Bruno and IDSC continue to work with the Village regarding the development of the Melrose Park Property to the exclusion of Scarlato. The value of the Property, if fully developed as contemplated, is in excess of $90 million.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place, LLC and Washington Commons, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood, Anthony Bruno, Illinois Development Services Corporation, Frank A. Pasquale, Roy McCampbell,:

    (i)      Judgment for compensatory damages in an amount in excess of $1,000,000.00;

    (ii)    For such other relief as this Court deems just and equitable.

**Count IV**
**(Promissory Estoppel-Melrose Park Property)**

65.    Plaintiffs reincorporate and reallege paragraphs 1 through 64 as paragraph 65 of Count IV as fully set forth herein.

66.    The representations by Pasquale, McCampbell and Bruno on behalf of the Village constituted an unambiguous promise to Scarlato that, if he terminated his contract expectancy with the owner/seller of the Melrose Park Property, the Village would later sell and convey the Melrose Park Property to Scarlato and create a TIF from which Scarlato would derive reimbursement for development costs.

67.    At all times alleged herein, Pasquale, McCampbell, Bruno and the Village knew and intended that Scarlato would rely on their representations and promises regarding the Melrose Park Property to his detriment by severing his negotiated contract for the purchase of the Melrose Park Property in reliance on Pasquale's promise to sell the Melrose Park Property to Scarlato and involve Scarlato in development plans for the property. At all times, reliance by Scarlato on Defendants' promises was reasonable and foreseeable.

68.    Scarlato actually relied on the promises by Pasquale by terminating and severing the contract expectancy for the purchase of the Melrose Park Property to his detriment. After terminating that expectancy and allowing the Village to complete its own purchase of the property, the Village imposed additional conditions on Scarlato, requiring him to prepare development plans for the property and other properties directed by the Village as an additional prerequisite to conveyance of the Melrose Park Property to Scarlato. Scarlato incurred

substantial costs for preparation of development plans and land planning, all on reliance of the promises of Defendants. The Village has failed and refused to include him in any development or TIF plans regarding that Property and otherwise deprived him of the profits and benefits of ownership and development of the Melrose Park Property, the fully developed value of which exceeds $90 million.

69.     Pasquale, McCampbell and Bruno intended that Scarlato rely on his representations and promises, reliance on which was foreseeable by Pasquale and the Village.

70.     As a direct and proximate result of his justifiable reliance on the promises and representations by Pasquale, on which Scarlato relied to his detriment, Scarlato incurred, and continues to incur, damages by his deprivation of the rights derived from the ownership and development of the Melrose Park Property, the inability to rent or derive income from the Property and other damages to be proved at trial.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place, LLC, Washington Commons, LLC pray that this Court grant the following relief in their favor and against Defendant, the Village of Bellwood:

(i)     Judgment for compensatory damages to be proved at trial in excess of $51 million;

(ii)    For such other relief as this Court deems just and equitable.

### Count V
### (Civil Conspiracy-42 U.S.C. Sec. 1985(3))

71.     Plaintiffs reincorporate and reallege paragraphs 1 through 70 as paragraph 71 of Count V as fully set forth herein.

72.     Bruno, IDSC, Pasquale and McCampbell, in their individual capacities, intentionally conspired and worked together for the common plan and purpose of harming Plaintiffs by tortiously interfering with their rights to substantive due process, equal protection and otherwise by implementing a scheme to interfere with Plaintiffs' property rights and Plaintiffs' contracts and prospective business expectancies and economic advantage, solely motivated by personal animosity and the intent to harm Plaintiffs and their business interests.

73.     At all times alleged herein, each Defendant acted with a single plan, the existence of which was known to each conspirator, and the purpose of which is to injure Plaintiffs in their business operations and deprive them of their property rights and rights to equal protection under the laws.

74.     At all times alleged herein, Bruno and IDSC were acting in concert with, and as agents for, the Village for the purposes of depriving Scarlato of his rights and otherwise interfering with Scarlato's property rights, including, without limitation, contracts and business expectancies.

75.     Motivated solely by hatred, animosity and personal vindictiveness by each Defendant toward Scarlato, Defendants each engaged in acts in furtherance of their conspiracy by arbitrarily, willfully and intentionally orchestrating the denial, delay or interference with business license applications for Plaintiffs' tenants and tortiously interfering with Plaintiffs' business expectancies, solely based on personal animosity by Defendants toward Scarlato and with the intent to interfere with his property rights and business interests.

76.     At all times, Pasquale, McCampbell, Bruno and IDSC, intended to, and did, benefit directly and personally by injuring Scarlato and interfering with his ability to own and develop property in the Village of Bellwood and the Village of Melrose Park. At all times

alleged herein, Bruno and IDSC is a real estate developer whose interests are competitive with those of Scarlato.

77.    As a direct and proximate result of such unlawful conspiracy, Plaintiffs continue to be damaged by Defendants' unlawful conspiracy to deprive Plaintiffs of their contractual rights and business expectancies by the reduction in the value of Plaintiffs' property, interference with Plaintiffs' ability to obtain and retain tenants in properties they currently own and otherwise interfering with the ability of Bellwood Place to perform its obligations under, and derive benefits from, the TIF Agreement.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp., Bellwood Place, LLC, Madison St. Place LLC and Washington Commons, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood, Frank A. Pasquale, Anthony Bruno, Illinois Development Services Corporation and Roy McCampbell:

    (i)    A preliminary and permanent injunction restraining defendants from continuing to deny Plaintiff's constitutional rights;

    (ii)    Judgment for compensatory damages in an amount to be proved at trial in excess of $24 million;

    (iii)    Judgment for punitive damages in an amount to be determined at trial;

    (iv)    As award of reasonable costs and attorneys fees pursuant to 42 U.S.C. Section 1988; and

    (v)    For such other relief as this Court deems just and equitable.

**Count VI**
**(Declaratory Relief: Breach of Covenant of**
**Good Faith and Fair Dealing under TIF Agreement)**

78.    Plaintiffs reincorporate and reallege paragraphs 1 through 77 as paragraph 78 of Count VI as fully set forth herein.

79.    At all times alleged herein, the Village had a duty under Illinois law to exercise good faith and fair dealing in its performance and its enforcement of the TIF Agreement.

80.    An actual controversy exists between Plaintiffs and Defendants under 28 U.S.C. Section 2201 regarding the respective rights of the Village under the TIF Agreement regarding: (a) the rights of Bellwood Place, LLC to develop the 25th Avenue Property; and (b) the Village's good faith and fair dealing regarding consideration and approval of development plans submitted to the Village by Bellwood Place.

81.    By intentionally, arbitrarily, unreasonably and irrationally failing to review consider and approve development plans submitted by Bellwood Place, LLC under the TIF Agreement, the Village breached its implied obligations under the TIF Agreement and otherwise frustrated performance under the TIF Agreement by Bellwood Place and made the performance thereof impossible.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp. and Bellwood Place, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood:

(i)    A finding that the Village breached its implied covenant of good faith and fair dealing regarding consideration of development plans submitted by Bellwood Place under the TIF Agreement;

(ii)    A finding that the Village breached the TIF Agreement by failing and refusing to designate Bellwood Place as the "exclusive developer" of the Exhibit B Property;

(iii)    For such other relief as this Court deems just and equitable; and

(iv)    For compensatory damages to be determined at trial; and

**Count VII**
**(Anticipatory Breach of TIF Agreement-25th Avenue Property)**

82.    Plaintiffs reincorporate and reallege paragraphs 1 through 81 as paragraph 82 of Count VII as fully set forth herein.

83.    The TIF Agreement constitutes a valid and enforceable contract between the Village and Bellwood Place.

84.    The TIF Agreement contemplates a Development Agreement between the Village and Bellwood Place for the 25th Avenue Property and that Bellwood Place shall be the exclusive developer of the Exhibit B Property.

85.    The Crains Ad constitutes a repudiation and manifestation by the Village that it does not intend to perform its obligations under the TIF Agreement. Further, the Crains Ad and the Village's failure to consider the development plans submitted by Bellwood Place in good faith constitute a breach of the Village's implied duty of good faith and fair dealing.

86.    The conditions in the TIF Agreement could have been performed and fulfilled by Scarlato had the contract not been repudiated by the Village. At all times, Bellwood Place is and remains ready, willing and able to perform under the TIF Agreement.

87.    The Crains Ad constitutes a repudiation of the TIF Agreement by the Village and an anticipatory breach thereof.

88.    As a direct and proximate result of his justifiable reliance on the promises and representations by the Village and Pasquale, on which Scarlato relied to his detriment, Scarlato incurred, and continues to incur, damages in excess of $2 million for demolition costs, the diminished development value of the 25th Avenue Property, the inability to rent or derive income

from the buildings that the Village and Pasquale directed be demolished and other diminution of the value of the 25th Avenue Property.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp. and Bellwood Place, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood:

    (i)    Judgment for compensatory damages to be proved at trial for the costs incurred for demolition, lost rents and income from the demolished buildings and the diminished development value of the 25th Avenue Property, all to be proved at trial, in excess of $22 million;

    (ii)    For such other relief as this Court deems just and equitable.

## Count VIII
### (Promissory Estoppel-25th Avenue Property)

89.    Plaintiffs reincorporate and reallege paragraphs 1 through 88 as paragraph 89 of Count VII as fully set forth herein.

90.    At all times alleged herein, was the owner of the 25th Avenue Property. Prior to June 2006, various industrial and commercial buildings were located on the 25th Avenue Property.

91.    In reliance on the terms of the TIF Agreement, and representations by Pasquale that the Village would approve development plans to be submitted by Bellwood Place, Bellwood Place demolished the existing structures on the 25th Avenue Property.

92.    At all times alleged herein, Pasquale, at various meetings with Scarlato in 2006, should, in reliance of the contemplated TIF, begin demolition as soon as possible. The representations in the TIF Agreement and directly by Pasquale constituted a clear and unambiguous promise to Bellwood Place and Scarlato that they would be reimbursed for

demolition costs and further development costs from a TIF to be created by the Village. At all times, Pasquale intended that Scarlato rely on his representations and promises, reliance on which was foreseeable by Pasquale and the Village.

93.    In reliance on the representations of Pasquale on behalf of the Village, Scarlato completed demolition of the existing structures on the 25th Avenue Property. The costs incurred by Scarlato to complete demolition exceeded $2 million. Further, Scarlato incurred costs for land planning, development plans and other costs in reliance on the TIF Agreement and the representations of the Village regarding reimbursement.

94.    After Scarlato's demolition of the structures on the Property, all in reliance on the representations in the TIF Agreement, and the representations of Pasquale that Scarlato's carry costs (in excess of $50,000 monthly) and demolition costs would be reimbursed from a TIF to be created by the Village, Pasquale and the Village refused to consider or otherwise approve development plans submitted by Scarlato and Bellwood Place. On information and belief, the Village utilized drawings and development plans prepared by and paid for by Scarlato in connection with promotional materials relating to the development of the property.

95.    As a direct and proximate result of his justifiable reliance on the promises and representations by the Village and Pasquale, on which Scarlato relied to his detriment, Scarlato incurred, and continues to incur, damages in excess of $2 million for demolition costs, the diminished development value of the 25th Avenue Property, the inability to rent or derive income from the buildings that the Village and Pasquale directed be demolished and other diminution of the value of the 25th Avenue Property.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp. and Bellwood Place, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood:

    (iii)    Judgment for compensatory damages to be proved at trial for the costs incurred for demolition, lost rents and income from the demolished buildings and the diminished development value of the 25th Avenue Property, all to be proved at trial, in excess of $22 million;

    (iv)    For such other relief as this Court deems just and equitable.

### Count IX
### (Promissory Estoppel-725 Madison)

96.    Plaintiffs reincorporate and reallege paragraphs 1 through 95 as paragraph 96 of Count IX as fully set forth herein.

97.    At all times alleged herein, Madison St. Place LLC ("Madison St. Place") was the owner of real property commonly known as 725 Madison in the Village of Bellwood ("Madison Property"). Prior to April 2005, various industrial and commercial buildings were located on the Madison Property.

98.    Prior to April 2005, Pasquale and Bruno had various meetings with Scarlato, and other representatives of Scarlato & Sons, regarding the development of the Madison Property in connection with a TIF that was contemplated by the Village. Those meetings took place outside of the Village Hall. At those meetings, Pasquale represented directly to Scarlato that if Scarlato demolished the existing structures on the Madison Property, the Village would create a Tax Increment Financing District that included the Madison Property, from which Scarlato would received reimbursement for demolition costs and the principal, interest and taxes incurred by Scarlato relating to ownership of the Madison Property.

99.    At those meetings, Pasquale specifically advised Scarlato that the demolition must be completed "prior to the [upcoming] election" and, therefore, Scarlato should, in reliance of the contemplated TIF, begin demolition as soon as possible. The representations by Pasquale constituted a clear and unambiguous promise to Scarlato that he would be reimbursed for demolition costs and further development costs from a TIF to be created by the Village. At all times, Pasquale intended that Scarlato rely on his representations and promises, reliance on which was foreseeable by Pasquale and the Village.

100.    In reliance on the representations of Pasquale on behalf of the Village, Scarlato completed demolition of the existing structures on the Madison Property. The costs incurred by Scarlato to complete demolition exceeded $2 million.

101.    After Scarlato's demolition of the structures on the Property, all in reliance on the representations of Pasquale that Scarlato's carry costs (in excess of $50,000 monthly, including taxes and insurance) and demolition costs would be reimbursed from a TIF to be created by the Village, Pasquale and the Village advised Scarlato that the Village would not implement any TIF that included the Madison Property. At least until April 2007, the Village continued to advise Scarlato that a TIF would proceed that included the Madison Property, out of which Scarlato would be reimbursed for demolition and development costs.

102.    As a direct and proximate result of his justifiable reliance on the promises and representations by Pasquale, on which Scarlato relied to his detriment, Scarlato incurred, and continues to incur, damages in excess of $3.5 million for demolition costs, the diminished development value of the Madison Property, the inability to rent or derive income from the buildings that Pasquale directed be demolished and other diminution of the value of the Madison Property.

WHEREFORE, Plaintiffs, Ronald Scarlato, Scarlato & Sons Realty & Development Corp. and Madison St. Place, LLC pray that this Court grant the following relief in their favor and against Defendants, the Village of Bellwood:

(i)     A finding that the Village is obligated to create a Tax Increment Financing district that includes the Madison Property;

(ii)    Judgment for compensatory damages to be proved at trial in excess of $3.5 million;

(iii)   For such other relief as this Court deems just and equitable.

Respectfully submitted,

RONALD SCARLATO, *et al.*

By: _____
One of their attorneys

Gregory A. McCormick
GARFIELD & MEREL, LTD.
223 W. Jackson Blvd., Suite 1010
Chicago, IL 60606
(312) 288-0105
ARDC No. 6201621

# VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

RONALD SCARLATO

05/18/2006  10:00  7085474959         GREATER CHICAGO BANK                 PAGE  02/07

## MEMORANDUM OF AGREEMENT
## BETWEEN VILLAGE OF BELLWOOD
## AND BELLWOOD PLACE, LLC.

WHEREAS, the parties, hereto have entered into discussions with a view to finalizing an agreement for redevelopment of certain real estate hereinafter described; and

WHEREAS, the parties desire to memorialize the financial and other terms of the agreement insofar as they have been determined to date;

### WITNESSETH:

In consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1. The Village of Bellwood ("Village") hereby declares its intention to create one or more Tax Increment Finance (TIF) districts which will include the property described on Exhibit A ("Subject Property.")

2. Upon creation of the TIF district for the Subject Property, the Village will issue TIF revenue bonds in an amount sufficient to deliver the Developer the amount of at least $2.3 million per the terms herein.

3. Bellwood Place, LLC ("Developer") agrees to develop the Subject Property in accordance with the TIF Redevelopment Plan to be approved by the Village.

4. Upon delivery by Developer to the Village of evidence that (1) all improvements on the Subject Property have been demolished, (2) that the Subject Property meets applicable Illinois EPA standards, and (3) an NFR letter has been issued by the IEPA, for the Subject Property as may be necessary, covering any applicable environmental issues thereon, then the Village will reimburse Developer in an amount not to exceed $2,300,000.00 from TIF bond proceeds for TIF-eligible development costs.

5. Thereafter, the Village will annually reimburse Developer up to fifty percent (50%) of TIF increment revenues from the Subject Property, not to exceed in the aggregate, including the amount paid in Section 3 above, five million dollars ($5 million), for TIF-eligible development costs.

6. Village further agrees that it will create a TIF District on the property identified on Exhibit B for development and that Developer shall be

1



EXHIBIT

1

designated as the exclusive developer of the TIF district, subject to terms to be mutually agreed by the parties hereto.

7. The parties agree to enter into a Development Agreement defining other terms and conditions of the redevelopment project, and incorporating the terms of this Memorandum of Agreement.

Village of Bellwood,
A municipal corporation,

By _Frank A. Pasquale_
    Mayor

Attest:

_Ron J. McCampbell_
    Comptroller

Bellwood Place, LLC

By _____ MGR

Attest:

_____ MGR

2

Exhibit A
Subject Property

3

EXHIBIT A

110 PROPERTY

PARCEL 1:

THE SOUTH 187.00 FEET AND THAT PART OF THE EAST 33.00 FEET LYING NORTH OF THE SAID SOUTH 187.00 FEET OF THE FOLLOWING TRACT OF LAND:

THAT PART OF THE EAST ½ OF THE SOUTHEAST ¼ OF SECTION 4, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING SOUTH OF THE CENTERLINE OF THE ELGIN ROAD (WEST LAKE STREET) AND EAST OF THE EAST LINE OF THE RIGHT OF WAY OF THE CHICAGO, HAMMOND AND WESTERN RAILROAD COMPANY, **(EXCEPT THAT PART TAKEN FOR CONDEMNATION IN CASE NO. 81L14169)**, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

THAT PART OF THE NORTH ½ OF THE NORTHEAST ¼ OF SECTION 9, TOWNSHIP 39 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE NORTHERLY LINE OF THE RIGHT OF WAY OF THE CHICAGO AND NORTHWESTERN RAILROAD COMPANY, AND EAST OF A LINE DRAWN PARALLEL WITH THE EAST LINE OF SAID SECTION 9, AND 1251.8 FEET WEST OF SAID EAST LINE OF SECTION 9, **(EXCEPT THAT PART OF SAID LAST DESCRIBED LAND CONVEYED BY HOMER C. HUNT AND WIFE TO THE CHICAGO, HAMMOND AND WESTERN RAILROAD COMPANY BY DEED DATED JUNE 17, 1897 AND RECORDED JUNE 19, 1897 AS DOCUMENT 2554182, IN BOOK 5906, OF RECORDS, AT PAGE 443)**, ALL IN COOK COUNTY, ILLINOIS.

110 N. 25th Avenue, Bellwood, Illinois

PIN:                    15-09-201-001-0000
                        15-04-412-008-0000

Exhibit B


That area excluding the Subject Property identified as follows: the corporate boundary on the north, 25th Ave on the east, Grant Street on the south and the Indiana Belt Harbor Railroad on the west

# AVAILABLE FOR REDEVELOPMENT
## The Lakewood Center

**Transit Oriented**
**Mixed-Use Development**

**25th Avenue and Lake Street**
**Bellwood / Melrose Park, IL**



# Proposed New Metra Station




- 18 - 38 acres available
- Mixed-use redevelopment
- Servicing Metra West Line
- Collaboration with IDOT to improve 25th Avenue traffic flow

- TIF financing available
- Developer incentives available
- Prime access to I-290
- 10 miles to Chicago

For additional information, please contact:



Roy F. McCampbell
Comptroller/Administrator
(708) 547-3500 Ext. 345

Submitted subject to error, change in status, or withdrawal without notice.

EXHIBIT

2