# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RONALD SCARLATO, SCARLATO & )
SONS REALTY & DEVELOPMENT CORP., )
BELLWOOD PLACE, LLC, MADISON ST. )
PLACE, LLC and WASHINGTON )
COMMONS, LLC, )
                             )     No.    08-00546
         Plaintiffs, )
                             )     Honorable Milton I. Shadur
                             )
VILLAGE OF BELLWOOD, ILLINOIS, )
FRANK A. PASQUALE, ROY MCCAMPBELL, )
ANTHONY BRUNO and ILLINOIS )
DEVELOPMENT SERVICES CORPORATION )
                             )
         Defendants. )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT FRANK PASQUALE'S MOTION TO DISMISS

### INTRODUCTION

In this action, the Plaintiffs, Ronald Scarlato and several companies owned and managed by him (hereinafter collectively referred to as "Plaintiffs"), have filed a multi-count complaint against several Defendants, including Village of Bellwood Mayor Frank Pasquale, alleging violations of substantive due process and equal protection under 42 U.S.C. § 1983 (Count I), and Illinois tort and contract law (Counts II through IV and VI through IX).[1] The thrust of the complaint is that the Defendants allegedly breached certain agreements and interfered with certain economic opportunities for Plaintiffs to own and develop Tax Increment Financing ("TIF") property in the Village of Bellwood. Only Count I (Section 1983) and Counts II and III (state law tortious interference claims) are directed toward Defendant Pasquale.

---

[1]On January 29, 2008, this Court, *sua sponte*, dismissed Count V, which was a civil conspiracy count under 42 U.S.C. § 1985, because there were no requisite race-based allegations.

Defendant Pasquale has moved to dismiss Count I based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In alleging harm to their constitutional property rights, Plaintiffs' claims effectively fall within the framework of a federal takings claim. This claim is not ripe for review because Plaintiffs have not pursued their state law remedies first before seeking a remedy under § 1983. See Williamson Co. Regional Planning Comm'n v. Hamilton Bk., 473 U.S. 172 (1985).

Defendant Pasquale has also moved to dismiss Count I for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have wholly failed to allege that they were treated differently than others similarly situated and, therefore, have failed to state an equal protection claim. In addition, Plaintiffs have alleged nothing more than selective enforcement of municipal ordinances, which is a claim that can and should be redressed under state law. See Hilton v. City of Wheeling, 209 F. 3d 1005 (7th Cir. 2000).

Finally, Defendant Pasquale has moved to dismiss Counts II and III. The former claim is premised on injuries allegedly suffered as a result of the Defendants' failure or refusal to issue business licenses and, therefore, is barred under Sections 2-104 and 2-206 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-104, 2-206 (West 1998). Furthermore, neither Count II nor III state a cause of action for tortious interference under Illinois law. Alternatively, should this Court dismiss Plaintiffs' federal claims, it should relinquish jurisdiction over Counts II and III.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule 12(b)(1) challenges a district court's subject matter jurisdiction. Ripeness is a jurisdictional issue appropriately addressed under Rule 12(b)(1). Hanna v. City of Chicago, 212 F.3d 856, 861 (7th Cir. 2002). Whether a complaint should be dismissed for a failure to state a cause of action upon which relief may be granted is determined pursuant to Federal Rule of Civil Procedure 12(b)6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1964-65 (2007). A complaint must clear two hurdles to survive a motion to dismiss: (1) it "must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests;'" and, (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, . . . [and] if they do not, the plaintiff pleads himself out of court." EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65).

## FACTUAL ALLEGATIONS

### I.    Parties

Plaintiff Ronald Scarlato (hereinafter "Scarlato") is a principal of Scarlato & Sons Realty & Development, Inc., which is an Illinois corporation that owns, develops and manages commercial and industrial real estate (Compl. ¶¶ 3-4). Through various entities, Scarlato owns real estate in the Defendant Village of Bellwood (Compl. ¶¶ 4-8). Defendant Frank Pasquale is the Mayor of the Village of Bellwood, and Defendant Roy McCampbell is the Village Comptroller (Compl. ¶¶ 10-11). Defendant Anthony Bruno is the principal and president of Illinois Development Services Corporation (¶ 12).

### II.    TIF Agreement

Scarlato is also the principal and manager of Defendant Bellwood Place, LLC (Compl. ¶ 6). In May of 2006, Scarlato and the Village entered into a Memorandum of Agreement ("TIF Agreement") (Compl. ¶ 13). Under the TIF Agreement, the Village declared its intention to create tax increment financing districts ("TIF Districts") involving certain property and to issue revenue bonds in the amount of $2,300,000 (Compl. ¶ 14; Ex. A, Memo. of Agree.). Bellwood Place, in turn, declared its intention to develop the property in accordance with a TIF Redevelopment Plan to be approved by the Village (Compl. ¶¶ 14-15; Ex. A). Once Bellwood Place demolished the existing improvements located on the 25th Avenue Property, met applicable Illinois EPA standards, and presented a NFR letter issued by the IEPA, then the Village agreed to reimburse Bellwood Place in an amount not to exceed the $2,300,000 from bond proceeds (Id.). In addition, the Village agreed to reimburse Bellwood Place 50% of all TIF revenues (Id.).

Throughout 2005 and 2006, in reliance on the TIF Agreement, Scarlato and Bellwood Place incurred substantial costs in demolishing the existing structures and preparing the development plans (Compl. ¶¶ 17, 22-23). However, Plaintiffs could not obtain an NFR letter until certain remedial acts were done and plans were approved by the Village (Compl. ¶¶ 18-19). According to Plaintiffs, the Village has rejected development plans submitted by Scarlato and Bellwood Place in order to prevent them from performing under the TIF Agreement and receive reimbursement of development costs and TIF revenue and otherwise to develop the TIF property (Compl. ¶¶ 19-21).

In April of 2007, the Village placed an advertisement in Cranes Chicago Business publication stating that the TIF property was available for redevelopment (Compl. ¶ 24). Plaintiffs claim that the Village's act of soliciting developers constituted an anticipatory breach and repudiation of the TIF Agreement (Compl. ¶ 25).

### III.     Melrose Park Property

Scarlato alleges that, in July of 2005, he negotiated the purchase of certain property located north of the TIF property ("Melrose Park Property") (Compl. ¶ 26). In May of 2006, he met with Bruno, Pasquale and McCampbell, who requested that he cease the negotiations and allow the Village to buy the property (Compl. ¶¶ 27-28). Scarlato was told that the Village would then sell the property to him, and that he should submit development plans as the part of the TIF District (Compl. ¶¶ 28-31). According to Scarlato, the Village bought the property and used his plans, but never sold him the property or allowed him to develop it (Compl. ¶¶ 30-31). Scarlato claims that the Defendants' fraudulent representations caused him to pass on the opportunity to buy the Melrose Park Property and to incur substantial costs in preparing the development plans (Compl. ¶ 32).

### IV.     Selective Enforcement of Business License Ordinance

Sometime after July of 2007, the Village, directed by Pasquale and McCampbell, began issuing notices to Scarlato & Sons arising from the failure of Scarlato's tenants to obtain business licenses in violations of § 110.02 of the Village Code of Ordinances (Compl. ¶¶ 37-38). Scarlato also alleges that the Village has inexplicably delayed some tenants' applications for business licenses and has advised tenants that their applications would be denied or delayed because their buildings were owned by Scarlato (Compl. ¶

4

39). In December of 2007, Scarlato sold property located at 2400 Maywood to a buyer
who was subsequently told by the Village that he would not receive a business license or
certificate of occupancy until he removed signs reflecting Scarlato's name from the
property (Compl. ¶¶ 40-41).

**ARGUMENT**

I.    **THIS COURT LACKS SUBJECT MATTER JURISDICTION
      OVER PLAINTIFFS' SECTION 1983 CLAIMS BECAUSE THOSE
      CLAIMS ARE NOT RIPE FOR REVIEW**

       The first question for a federal court to consider is whether it has subject matter
jurisdiction. Johnson v. City of Chicago, 2007 WL 4150312 *1 (N.D. Ill. 2007). This
Court "must assure itself that it possesses jurisdiction over the subject matter of an action
before it can proceed to take any action respecting the merits of the action." Cook v.
Winfrey, 141 F.3d 322, 325 (7th Cir. 1998).

       Plaintiffs have attempted to invoke this Court's subject matter jurisdiction by
bringing a claim under 42 U.S.C. § 1983 and the Due Process and Equal Protection
clauses of the Fourteenth Amendment. Plaintiffs have alleged that they possessed
"protected property interests by virtue of ownership by entities controlled and managed
by Scarlato of commercial and industrial properties . . . which are occupied by tenants
pursuant to leases that require the payment of rent" (Compl. ¶ 43). Plaintiffs claim that
they were deprived of those economic rights when Defendants arbitrarily processed
business license applications (Compl. ¶¶ 42-52). The thrust of Plaintiffs' federal claim,
at its core, is that they suffered economic injuries to their property rights, including the
diminution of their property values, as a result of Defendants' conduct (Compl. ¶ 51).

       In Williamson Co. Regional Planning Comm'n v. Hamilton Bk., 473 U.S. 172
(1985), the Supreme Court set forth a special ripeness doctrine for claims which involve
constitutional property rights. A landowner who alleges that his economic rights in
owning land have been harmed may not bring a § 1983 takings claim until he has
exhausted his remedies for obtaining just compensation under available State procedures.
Id. Thus, asserting such a claim without first resorting to State law remedies renders the
federal claim unripe for review. Id. at 195.

5

Although Plaintiffs have not expressly alleged a federal takings claim, Williamson County's special ripeness doctrine has been broadly extended to include § 1983 substantive due process and equal protection claims, "when those claims fall within the framework of a takings claim." Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004). In other words, a plaintiff landowner may not avoid Williamson County's ripeness requirement merely by re-labeling its takings claim as due process or equal protection violations. See Patel v. City of Chicago, 383 F.3d 569, 573 (7th Cir. 2004).

The Seventh Circuit has "yet to excuse any substantive due process claim in the land-use context from Williamson's ripeness requirements." Forseth v. Village of Sussex, 199 F.3d 363, 369 (7th Cir. 2000). "A person contending that state or local regulation of the use of land has gone overboard must repair to state court." River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir.1994). This is so even if the plaintiff has accused the public entity of acting out of purely private, as opposed to public, motives. Forseth, 199 F.3d at 369-70 (citing, Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 179-80 (7th Cir. 1996)). Municipal action which allegedly halts land development or decreases property value is, at best, cognizable as a takings claim and not as a due process violation. See Gosnell v. City of Troy, 59 F.3d 654, 656 (7th Cir. 1995).

Against that backdrop, Plaintiffs in the instant case have alleged that the Defendants have arbitrarily and selectively enforced local ordinances thereby interfering with their ability to lease property, and that, as a result, they have suffered a diminution of their property values and ability to do business in the Village (Compl. ¶ 51). Plaintiffs have effectively alleged a takings claim which, under Williamson County, is not ripe for review, because Plaintiffs have not first pursued available state law remedies. Accordingly, Count I should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

II.    **PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER
        SECTION 1983 FOR VIOLATIONS OF SUBSTANTIVE DUE
        PROCESS OR EQUAL PROTECTION**

Even if this Court finds that Plaintiffs' federal claims are ripe for review, the claims should still be dismissed. As discussed below, Plaintiffs have failed to state a cause of action under § 1983 for either substantive due process or equal protection violations.

A.    **Plaintiffs have failed to state a cause of action for violation of
       substantive due process.**

The Supreme Court has not expanded substantive due process beyond the context of fundamental rights such as "matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994). See, also, Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (expressing reluctance to expand substantive economic due process "because guideposts for responsible decision making in this unchartered area are scarce and open-ended"). Absent a deprivation of a fundamental right, a business claiming a violation of economic substantive due process, like Plaintiffs in the instant case, "must make their arguments under the takings clause and the rational-basis component of equal protection analysis . . . ." Gosnell v. City of Troy, 59 F.3d 654, 657 (7th Cir. 1995). "A whimsical state decision that deprives property of value either acts as a taking and so is compensable under this strand of due process analysis or confiscates property for private use, violating a negative implication of the takings clause." Id. at 658. Simply put, "developers cannot move land-use disputes to federal court by crying 'substantive due process.'" Id.

For that reason, the Seventh Circuit requires more than a mere allegation that the local government defendant acted arbitrarily. Kauth v. Hartford Ins. Co., 852 F.2d 951, 957 (7th Cir. 1988). In order to state a due process claim, a plaintiff must also allege that a separate constitutional violation exists or that state law remedies are inadequate. Doherty v. City of Chicago, 75 F.3d 318, 325 (7th Cir. 1996); New Burnham Prairie Homes v. Vill. of Burnham, 910 F.2d 1474, 1480-81 (7th Cir. 1990); Polenz v. Parrott, 883 F.2d 551, 558 (7th Cir. 1989). These mandates are consistent with the Supreme Court's refusal to "make of the Fourteenth Amendment a font of tort law to be

superimposed upon whatever systems may already be administered by the states." Kauth, 852 F.2d at 957.

Although Plaintiffs in the instant case have alleged that Defendants acted arbitrarily in delaying or denying business licenses and selectively enforcing its building code, they fail to allege that their state law remedies are inadequate. Indeed, a claim challenging local land use actions, whether premised on due process or a taking, properly belongs in state court. Hager v. City of West Peoria, 84 F.3d 865, 869 (7th Cir. 1996); Covington Ct. Ltd. v. Vill. of Oak Brook, 77 F.3d 177, 179 (7th Cir. 1996); River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994). Adequate remedies exist in state court including an inverse condemnation action, tort claims for damages, or civil conspiracy - many of which Plaintiffs have already alleged in this lawsuit. See Gosnell, 59 F.3d at 658; See Easter House v. Felder, 910 F.2d 1387, 1405 (7th Cir. 1990) (holding that state law damages claims are available remedies under Illinois law to redress due process violations).

The only basis for Plaintiffs to proceed with their federal claim in this lawsuit is to show that they have adequately alleged an independent constitutional violation. The only substantive constitutional claim brought by Plaintiffs is a "class of one" equal protection claim, which is discussed below.

### B.    Plaintiffs have failed to state a cause of action for violation of equal protection.

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. Typically, an equal protection claim requires membership in an identifiable suspect class. McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002, fn. 3 (7th Cir. 2004). As this Court recognized in its January 29th order, however, Plaintiffs have not alleged disparate treatment based on a suspect class but, rather, they have alleged that they were singled out as a "class of one." See Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000). In order to state such a claim, a plaintiff must adequately allege: (1) that he was intentionally treated differently from others similarly situated; and, (2) that there was no rational basis for the difference in treatment or the cause of the differential treatment is a

totally illegitimate animus toward the plaintiff.  St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 638 (7th Cir. 2007).

> ### 1.    Plaintiffs have wholly failed to allege that they were treated differently than others similarly situated.

To be similarly situated, a plaintiff must be *prima facie* identical or directly comparable in all relevant respects.  Racine Charter One, Inc. v. Racine Unified School Dist., 424 F.3d 677, 680 (7th Cir. 2005).  "[T]he essence of an equal protection violation is, after all, *discrimination* of some sort."  Lunini v. Grayeb, 395 F. 3d 761, 769 (7th Cir. 2005) (emphasis supplied and footnote omitted).  The "similarly situated" requirement must be meaningfully applied so as "not to constitutionalize all tort law [or] transform every claim for improper provision of municipal services or for improper conduct into a federal case."  McDonald v. Vill. of Winnetka, 371 F.3d 992, 1009 (7th Cir. 2004).

In the instant case, Plaintiffs have not alleged that they were treated differently than others who were similarly situated.  In fact, there is not a single reference in the complaint to any disparate treatment.  This deficiency, alone, warrants dismissal of Plaintiffs' equal protection claim.  See Stachowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005) (affirming dismissal of complaint where fired police officer failed to sufficiently allege that he was treated differently than other officers who were treated more fairly after they were fired); Vukadinovich v. Bd. of School Trustees, 978 F.2d 403, 414 (7th Cir. 1992) (holding that school teacher failed to adequately allege similarly situated requirement because he only alleged that he had generally same background as others who were treated more fairly); McCrimmon v. Kane County, 606 F. Supp. 216, 219-220 (N.D. Ill. 1985) (dismissing "class of one" claim because plaintiffs failed to allege that they were deliberately singled out for disparate treatment from others similarly situated).

Furthermore, given the Plaintiffs' detailed allegations of their *exclusive* contractual relationship with the Village relating to development of the TIF districts, it would be impossible for Plaintiffs to make a claim of disparate treatment.  Even if there were other commercial and industrial property owners in Bellwood who have been treated more favorably when it came to enforcement of the Village's business license

ordinance, Plaintiffs were allegedly the only ones that were given the *exclusive* right to develop the TIF properties. Since the gist of Plaintiffs' lawsuit is that they were prevented from exclusively developing the TIF properties in violation of the TIF Agreement and oral promises, no one else could possibly be similarly situated. See, e.g., Racine Charter, 424 F.3d at 680-683 (holding that public school district, which refused to bus charter school students, did not violate equal protection rights because the unique status of charter school students did not make them similarly situated to public or private school students who were provided busing). Accordingly, Plaintiffs have not stated a cause of action for an equal protection claim.

> **2.     Plaintiffs have failed to adequately allege that illegitimate animus motivated Defendants' selective enforcement of the business license ordinance.**

As stated above, a "class of one" equal protection claim plaintiff must allege that there was no rational basis explaining Defendants' conduct, or that the Defendants' conduct was based upon an illegitimate animus. See St. John's United Church of Christ v. City of Chicago, 502 F.3d at 638. The conjunctive nature of this test is the product of an intra-circuit split. See Racine Charter, 424 F.3d at 683-84 (outlining cases requiring mere absence of rational basis versus cases requiring illegitimate animus). The Seventh Circuit has attempted to reconcile the split in cases alleging selective enforcement of local ordinances, such as the instant case, by requiring that a plaintiff allege that the defendant acted "for some invidious reason, such as the plaintiff's race . . . ."Tuffendsam v. Dearborn County Bd. of Health, 385 F.3d 1124, 1128 (7th Cir. 2004); see, also, Doe v. Biang, 494 F. Supp.2d 880, 897 (N.D. Ill. 2006). The reason for requiring an invidious reason is that the Constitution does not require a municipality to enforce its laws evenly. Tuffendsam, 385 F.3d at 1128. "Selective, incomplete enforcement of the law is the norm in this country." Id.

In the instant case, assuming for the sake of this argument that Plaintiffs have adequately alleged disparate treatment,[2] the complaint does not sufficiently allege that the reason for Defendants' conduct was invidious. Plaintiffs merely allege that Defendants

---

[2] Again, the absence of any allegation that Plaintiffs were treated differently than others similarly situated dooms their equal protection claim.

acted out of personal animosity toward Scarlato. However, under <u>Bell Atlantic</u>, such a "formulaic recitation" does not give Defendants fair notice of the claim nor does it, alone, plausibly suggest that Plaintiffs are entitled to relief. Did the individual defendants stand to achieve some personal pecuniary gain? <u>See Forseth</u>, 199 F.3d at 371. Was it because Scarlato had engaged in protected First Amendment speech such as withdrawing political support for the Mayor or criticizing the Mayor's practices? <u>See Esmail v. Macrane</u>, 53 F.3d 176 (7th Cir. 1995). Was it because Scarlato had successfully sued the Village on prior occasions? <u>Willowbrook v. Olech</u>, 528 U.S. 562 (2000). None of these scenarios are alleged in the complaint. <u>See Harden Food and Liquor v. City of Chicago</u>, No. 04 C 5251, 2004 WL 3119013, * 4 (N.D. Ill. 2004) (dismissing "class of one" claim because plaintiff's allegation fell well short of showing that defendant harbored "deep seated animosity" required to state a claim). As the Seventh Circuit stated in <u>Lauth</u>, "[a]s one moves away from the paradigmatic case, the sense of wrong of constitutional dignity, and of the need for a federal remedy, attenuates." <u>Lauth</u>, 424 F.3d at 633.[4]

Furthermore, the Seventh Circuit has held that, in order to allege a viable "class of one" equal protection claim, a plaintiff must "'negat[e] any reasonably conceivable state of facts that could provide a rational basis for the classification.'" <u>Lauth v. McCollum</u>, 424 F.3d 631, 634 (7th Cir. 2005) (quoting, <u>Bd. of Trustees v. Garrett</u>, 531 U.S. 356, 367 (2001). In other words, a "class of one" claim is recognized only if no sound reason for the defendant's conduct can be hypothesized. <u>Id.</u> "Animus thus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus motivated it." <u>Id.</u> The Court concluded that "[s]ince hypothesis is not proof, this test . . . can often be applied in advance of discovery." <u>Id.</u>

The complaint in the instant case does not negate the multitude of rational reasons why Plaintiffs' tenants' license applications have not been timely processed. Maybe one of Scarlato's tenants did not complete the application properly or pay the required license fee. Maybe a tenant did not satisfy the required background investigation or the business

---

[3] While Plaintiffs allege that Scarlato helped find a job for Mayor Pasquale's son in May of 2007, and that the son was fired two months later, Plaintiffs have denied that Scarlato was involved in the termination, and nowhere do they allege any connection whatsoever between the termination and an invidious motive for the alleged disparate treatment (Comp. ¶¶ 33-35).

11

premises did not meet building, fire or other regulatory requirements. Plaintiffs' complaint does not negate these conceivable reasons. See Mercatus Group LLC v. Lake Forest Hospital, No. 07 C 2042, 2007 WL 4117607, * 16 (N.D. Ill. 11/15/07) (dismissing "class of one" equal protection claim because court could hypothesize a rational basis for municipality's denial of development plans).

In summary, to allow this case to proceed forward into discovery absent sufficient allegations that Plaintiffs were treated differently than others similarly situated, or that Defendants were motivated by some "totally illegitimate animus," would draw "federal courts . . . deep into the local enforcement of petty state and local laws" (see Hilton, 209 F.3d at 1008), and cause "the judicial system [to] overflow with equal protection claimants seeking damages for the discourteous treatment they received from various public servants." See Bell v. Duperrault, 367 F.3d 703, 709 (7th Cir. 2004). Under these circumstances, state law, and not § 1983 or the United States Constitution, provides the Plaintiffs with the remedies they seek. Hilton, Id. Accordingly, Plaintiffs have not stated a cause of action and their federal claim should be dismissed.

## III.   PLAINTIFFS' TORTIOUS INTEFERENCE WITH EXISTING LEASES CLAIM (COUNT II) IS BARRED BY STATUTORY TORT IMMUNITY AND THEREFORE SHOULD BE DISMISSED

In Count II, Plaintiffs allege that the Village, Pasquale and McCampbell tortiously interfered with existing leases between Plaintiffs and their tenants by intentionally, arbitrarily, unreasonably and irrationally failing to timely and reasonably process and consider business licenses (Compl. Count II, para. 56). As discussed below, however, this claim is barred by tort immunity.

Sections 2-104 and 2-206 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act provide that public entities and employees are not liable for injuries caused by the failure or refusal to issue any governmental permit or license. 745 ILCS 10/2-104, 2-206 (West 1998). The immunity provided by Sections 2-104 and 2-206 is absolute. See Vill. of Bloomingdale v. CDG Enterprises, 196 Ill. 2d 484, 752 N.E.2d 1090, 1098 (2001) (rejecting argument that section 2-104 is qualified by common law "corrupt or malicious motives" exception).

In <u>CDG Enterprises</u>, a land developer brought a claim for tortious interference with business expectancy against a village which had denied a zoning permit to build a residential subdivision. The developer alleged that he was led on by village officials that his project would be approved yet, unbeknownst to him, the village secretly worked behind the developer's back to force him out of the project. The Court held that the plain language of the section 2-104 absolutely immunized the village from liability stemming from the denial of the permit, even if the permit was denied through an abuse of governmental power. 752 N.E.2d at 1099. "[S]ection 2-104 contains no reference to intent whatsoever and . . . it certainly does not contain an exception for 'willful and wanton misconduct' or 'corrupt or malicious motives.'" <u>Id.</u> The Court also rejected the developer's attempt to circumvent section 2-104 by characterizing his claim as a "theft of [economic] opportunity." <u>Id.</u> at 1100. The Court held that the developer's claim squarely fell within the scope of section 2-104 and immunized the village from liability "for any injury resulting from [the denial of the zoning permit]." <u>Id.</u>

In the instant case, the Plaintiffs similarly alleged that the Defendants abused their governmental powers by failing to timely process business license applications relating to Plaintiffs' tenants or properties controlled by Plaintiffs, and that, as a result, they suffered economic injuries. Accordingly, under <u>CDG Enterprises,</u> Plaintiffs' claim falls directly within the scope of Sections 2-104 and 2-206. Accordingly, Count II should be dismissed with prejudice, because it is barred by statutory tort immunity.

## IV.    PLAINTIFFS FAIL TO STATE CAUSES OF ACTION FOR EITHER TORTIOUS INTEFERENCE WITH EXISTING CONTRACT OR BUSINESS EXPECTANCY (COUNTS II AND III)

In Count II, Plaintiffs allege a claim for interference with existing leases, and in Count III they allege interference with a prospective purchase agreement for the Melrose Park Property. These claims reflect separate and distinct torts. See <u>International Star Registry of Illinois v. ABC Radio Network, Inc.</u>, 451 F.Supp.2d 982, 991 (N.D. Ill. 2006). The former requires: (1) a valid and enforceable contract; (2) defendants' knowledge of the contract; (3) defendants' intentional and unjustified inducement of a breach of the contract; (4) subsequent breach caused by defendants' unlawful conduct; and, (5) resultant damages. <u>Id.</u> The latter, on the other hand, involves an economic

expectancy that has not yet become a contract. Id. A plaintiff claiming the latter must sufficiently allege: (1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the expectancy; (3) purposeful interference that prevents the expectancy from being fulfilled; and, (4) resulting damages. Id.

In Count II, Plaintiffs have alleged that Defendants unlawfully interfered with existing leases. While Defendants acknowledge that Plaintiffs have adequately alleged the existence of lease agreements and their knowledge of those agreements, nowhere in the Complaint do Plaintiffs allege that Defendants affirmatively induced any tenant to breach a lease or, in fact, that there was a breach of a lease. The absence of such allegations is fatal, and Count II should be dismissed on that basis alone.

At most, Plaintiffs make a fleeting reference to interference with "prospective leases," which would place this claim within the scope of interference with business expectancy. However, the Count II allegations are deficient as to this tort as well. In order to adequately allege such a claim, Plaintiffs must assert that the Defendants directed their conduct toward third parties with whom Plaintiffs had the business expectancy. International Star Registry, 451 F.Supp.2d at 992. In the instant case, Plaintiffs have only alleged that Defendants directed their conduct toward existing tenants, i.e., delaying business license applications to existing tenants (Compl. Paras. 38-40). There is no allegation that Defendants directed their alleged unlawful conduct toward prospective tenants. Thus, Count II fails the state a cause of action for interference with a prospective business expectancy.

Count III fails for the same reason. Plaintiffs allege in Count III that the Village, Pasquale and McCampbell induced Plaintiff Scarlato to cease negotiations for the purchase of the Melrose Park Property, and that Scarlato did so in reliance on the promise that the Village would buy the property, sell it to Scarlato and allow him to develop it as part of the TIF properties (Compl. Paras. 26-32, 61-64). Nowhere in the Complaint do Plaintiffs allege that the Village directed any unlawful conduct toward the party with whom the Plaintiffs had the business expectancy, i.e., inducing the original seller of the property not to enter into a purchase agreement with Plaintiffs. As such, Plaintiffs have failed to state a claim under Count III of the Complaint.

## IV.   ALTERNATIVELY, THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Absent unique circumstances, district courts should relinquish jurisdiction over pendant state claims when all federal claims have been dismissed before trial. <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Wright v. Associated Ins. Cos., Inc.</u>, 29 F.3d 1244, 1251 (7th Cir. 1994). Should this Court dismiss Plaintiffs' federal claims, its jurisdiction would be based entirely upon the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Section 1367(c)(3) allows this Court to decline supplemental jurisdiction after dismissal of all federal claims. As there is no compelling reason for this Court to retain jurisdiction, Defendant alternatively urge the Court to relinquish supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, the Defendant Frank Pasquale requests that this Court dismiss Counts I, II and III and enter judgment in his favor.

s/**MICHAEL D. BERSANI**
Michael D. Bersani, Atty. Bar Number 06200897
Charles E. Hervas, Atty. Bar Number 06185117
Attorney for Defendant Frank Pasquale
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
mbersani@hcbattorneys.com
chervas@hcbattorneys.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| RONALD SCARLATO, SCARLATO & SONS REALTY & DEVELOPMENT CORP., BELLWOOD PLACE, LLC, MADISON ST. PLACE, LLC and WASHINGTON COMMONS, LLC, ))))))) | |
| Plaintiffs, )) | No.    08-00546 |
| ) | Honorable Milton I. Shadur |
| v. )) | |
| VILLAGE OF BELLWOOD, ILLINOIS, FRANK A. PASQUALE, ROY MCCAMPBELL, ANTHONY BRUNO and ILLINOIS DEVELOPMENT SERVICES CORPORATION )))))) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2008, I electronically filed the foregoing *Memorandum of Law in Support of Defendant Frank Pasquale's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gregory A. McCormick
Garfield & Merel, Ltd.
223 West Jackson Blvd., Suite 1010
Chicago, IL 60606
mccormick@garfield-merel.com

John J. Rock
Rock Fusco, LLC
321 North Clark Street, Suite 2200
Chicago, IL 60610
jrock@rockfuscollc.com

Michael P. Latz
Ancel, Glink, Diamond, Bush, DiCianni & Kraftherfer, P.C.
140 South Dearborn, Suite 600
Chicago, IL 60603
mlatz@ancelglink.com

Daniel F. Gallagher
Paul A. O'Grady
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL 60604
dgallagher@querrey.com
pogrady@querrey.com

S/MICHAEL D. BERSANI
Michael D. Bersani, Bar Number 06200897
Attorney for Defendant, FRANK A PASQUALE
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
mbersani@hcbattorneys.com